# Exhibit 2

Electronically Received 07/01/2025 03:44 PM

Ingber Law Group
Jason M. Ingber (SBN 318323)
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
T:310-270-0089
E-mail: ji@jasoningber.com
Attorney for Plaintiffs


Nathalie D. Lopez (SBN 315522)
5101 E. La Palma Avenue, Suite 100E
Anaheim, CA 92807-2056
E-mail: Nathalie.Lopez.esq@gmail.com

Attorney for Plaintiff
Jose Salinas

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

Zachary Graham, Jaime Nahman, Brigham Avery, and Jose Salinas, Jorge Tapia Plancarte, Deisy Espinoza, Christina Leno, Jose De Jesus Vazquez Garcia, Trina Marie Innocenzi, Mariela Rodriguez And Bertha Briseno, Feliciano Guzman Moreno, Jessica Bui, Andi Woo, Matt Mcelearney, Amir Mohebbi, Issam Eljamal, Jackie Kolpa, Ivan Tapia-Rodriguez, Oscar Javier Tolentino, Jorge Perez De Tagle, Shayan Shahidi Zandi, Raul Ulloa, Michael Choyce, Robert Ferdan, Surya Iyer, Luis Padilla, Mehdi Mahmoodi, Mo Said, Jenny Ruiz, Azzam Yasseen, Maria Rodriguez, Kyle Domenic Cayce, Amanda Reeves, Luilly Martinez, Virginia Cruz, Ye Lu, Quentin Wu, Guadalupe Avalos, Saeid Eshraghi Tehrani, Leonid Pasechnik, Elodia Trabelsi, Kenneth Contreras, Abraham Rodriguez, Ang Li, Seoungwan Noh, Silvestre Solano, Joanne Qiu, Jose Avalos, Luz Myriam Montanez Lara, Mark Fisher, Miguel Angel Goyes, Hye Suk Sung, Tom Chung, Rhiannon Leal, Emad Missreezadah, Delmira Pellum, Vien Lam, Nina Cheska Serrano Makalinaw, Goel Yazdinian, Chongnian Tan, Hyoung Kiun Lee, Xi Yang Huang, Pamela Zhao, Maria Luisa Aleman Da Silva, Caroline Carillo,

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 24STCV31350

**AMENDED COMPLAINT FOR**
**(1) FRAUD**
**(2) LEMON LAW**
**(3) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
**(4) VIOLATION OF CAL. BUS. & PROF. CODE §17200. ET SEQ. (VIOLATION OF UNFAIR COMPETITION - UNFAIR BUSINESS PRACTICES)**
**(5) NEGLIGENT MISREPRESENTATION**

- 1 -
COMPLAINT

502

Abdela Bouhedda, Maxim Safonov, Sahil Alam, Jeff Carta, Denise Rosales, Archie Holton And Paul Van Berkom, Quang Mai, Jonathan Dela Paz, Arturo Mendoza, Chih Hsuan Lin, Dennis And Angela Eaton, Josh Hoang, Jacqueline V. Illera, Manuel Moumdjian, Larry Dale Costello, Tatsuhiro Sugihira, Francisco Iglesias, Leonardo Flores, Mohammad Naderi, Quang Lam, C.M. Djavaheri, Chrystal Lee, Thu Huynh, Jason Bryan Fong, Bimal Kansagra, Peter Mbonu, Eva Perez, Jose Ruiz, Utpala Bhalodia, Henry Cheuk Wah Li, Leonor Vasquez, David Gonzales, Rob Triplett, Zabastian Amadeuz, Haad Mahmood, Erick Shahnazari, Ali Feghhi, Prakash Prajapati, Paul Dayao, Tracey Adcock, Erfan Malakouti, Lorena Campos, Fabian Marin, Hossein Feghhi, Mustafa Hassan, Luis Jurado, Mark Brown, Anthony Maxey, Hung Do, Thao And Jacob Duong, Jose Salinas, Thanh-Minh and Nancy Tran, Ade Oyebade, Sylvia Alonso, Neil Erwin De Jesus and Jennifer Do, Mischana Arnold, Daren Camargo, Revaz Matsiashvil, Christopher Garcia, Ruben Ornelas, Apollo Maquiling, Jagdish Shah, Divina Novelo, Akesh Sheth, Morni Shah, Joseph Hilson, Shailesh Desai, Sandra Silva, Shweta Shah, Ramesh Jhaveri, Vijay Shah, Kyla Burke, Julio And Araceli Aguilar, Prasad Romijn, Abby Trowbridge, Jorge Tapia Plancarte, Sachie Monastiero, Juan Carlos Berumen Miranda, Kishor Sanghvi, Joe Lin, Dipak Sha, Daksha Mehta, Illuminada Baylosis, Hemant Shah, Patrick Metzker, Timothy Stemler, Vipinchandra Vadecha, Shaun Finn, Chani Rubin, Felipe Cardenas, Julie Membreno, Yogesh Shah, Belen Villasenor, Ashvin Sheth, Dan Rubin, James Panozzo, Jorge Garciarosell, Gaddoor Saidi, Anthony Smiroldo, Ramin Shirazi, Alcides Caceres, Maria Sandra Escamilla, Enrique Escamilla, Michael Portalatin, Brandon Nguyen, Amelia Valdez, Brigham Avery, Steven Collins, Jose Luis Jauregui, Jiyun Seo, Angela Schechinger, Kevork Balkian, Robert Kang, Beth Gawreluk, Noel Castro, Elsy Nohemy Perez Borja, Greg Rom, Eric Mccall, Junyu Miao, Zach Mccall, Francine Williams, Maria

- 2 -

**AMENDED COMPLAINT**

Regina Surio, Moosa Harasis, Ritesh Desai, Ivan Sanchez, Romano Manic, Mikaela Lanan, Mario Zepeda, Axel Ajtun, Adrian Dela Vega, Enrique Perez, Teresa Mendoza, Kaym Onel Bondoc, Bayron Estrada Gonzalez, Anna Marie Zarate, Miran Martirosyan, Nader Kazerooni, Matthew Ruso, Sooren Mostowfi, William Shim, Carmen Reyna Quintero, Youjin Ji, Domenic Ward, Tamer Hussein, Maria Bazan, Tracy Li, Nikkesha Shabazz, Alfredo Camargo Vargas, Adam Turton, Burhan Mustafa, Alberto Pacheco, Jobandeep Singh, Nafis Ishtyaq Akbar, Marcellus And Carlos Fletcher, Jenny Tsai, Sophia Auder Der Boghossian, Hovsep Der Boghossian, Raul Gonzalez Albarran, Beatriz Zaragoza, Navid Davidian, Jill Sweeney, Tasfin Mithu, Sylvia Roman, Elodia Navarro, Ian Dharma, Bao Duong, Melody Mohammed, Sumie Aspland, Yingchou Chen, Eddie Pulliam, Cesar Navarro, Sach Patel, Julie Doumit, Dora Alicia Orozco Sandoval, Eduardo Islas, Eugene Lee, Susan Herbst, Doo Suk Song, Carlo Malabuyo, Marc Jones, Anthony Bitar, Mark Talstein, Enrique Reyes, Maria Elena Cornejo, Geovany Francisco Renderos Mejia, Annette Aryanpour, Miguel Conniff, Anait Mkhitaryan, Alejandrina Navarr, Aaron Navarro, Darren Ooi, Julio Loria, Nicholas Spruck, Dolores Edith Garcia, Isabel Villegas, Marisol Mitchell, Manuel Ortega, Olga Varela, Lyndon Versoza, Elinor Marie Cruz Rossana Reyes, Mina Wardak, Daniel Valenzuela, Luis Valdez, Andy Nguyen, Alfredo Plaza, Carina Lopez, Carlos Fletes, Khuong Du, Emmanuel Robles Lezama, Catherine Mason, Heidi Abdelhamid, Sadrick Stromas, Alexi Calzatti, Mala Krishna, David Jason Brown, Ana Castaneda, Almirante Fernandez, Michael Prevulsky, Victor Paul Wajnberg, Peters Gordon, Chao Zhu, Paul Mancilla, Marivel Alvarez, Jimmy Marquez, Isaiah Garibay, Daniel Ara Mouradian, Azadeh Baniasad, Douglas Formby, Jamin Goggin, Jaime Williams, Jongha Kim, William Rose, Aleksandr Binkovich, Judith Swindle, Faris Shamieh, Guenetta Duchine, Bryant Turner, Tiffany Garrett, Luis

- 3 -

**AMENDED COMPLAINT**

Villegas, Saima Karim, Ting Wai Tom, Jean And Bernie Sewell, Carlos Asido, Miguel Servin, Kaveh Keshmiri, Fredy Santana, Johnny Mansour, Tommy Li, Kenneth And Collen Zwicker, Danielle Morris, Joanna Connie Tan, Sumeet Tulsani, Danny Choi, Severiano Aparicio, Shaun Ruiz, Carlos Delos Santos, James Lane, John Kelly, Jorge Sanchez, Inot Breb, Rosario Zand, Dennis Nguyen, Jason Cortizo, Matthew Citell, Aram Avedisian, Gilbert Deliso, Alan Ivan Han, Patrick Hughes, Spencer James, Austin Kastelic, Mohammad Lari, Sandra Magallon, Bradlee Michael Petzak, Ravi Ruhal, Anthony Escobedo, Jesse Namoonde, Arait Martinez, Luis Salazar, Jazmine Angelique Torres, Caroline Danielian, Cristina Simmons, Juan Guaedado, Salvador Magana, Lee Brooks, Linda Smith, Alexandra Rivera, Juan Rodriguez, Robert Coldren, Garner Guinn, Daphne Sims, Luis Zambrano, Brian Lindholm, Xuxin Zhang, Harout Karaoglanian, Susan Alice Dion, Wanda B. Walsh, Amber Delgado, Jeffery Vanhoepen, Alma Guzman, Patrick Cyccone Jr, Peter Gilkey, Pia Danisi, Melissa Luy, Adam Sarmiento, Donovan Olvera, David Loria, Humberto Clavel, Marquis Hubbard, Lifan Feng, Juan Galvan, Alba Galvan, Freidoon And Kimia Shams, Ahmadullah Ahmadi, Gary Borquez, Michele Mariano, Angelica Enriquez, Miguel Alcantara, Manuel Prado, Imam Kamran, Shaun Harrington, Dhaval Brahmbhatt, Vu Nguyen, Keith Weber, Donghak Ryan, Domenica Ramirez, Samuel Yang, Ruben Horta, Saleem Anwari, Doo Hyun Shin, Adolfo Riedel, Denaijia Horne-Johnson, Sarahi Mena, Trebor Parrish, Marcos Ramos, Jason Miller, Derrick Townsend, Lukas Bumbulis, Norman Gomes, Charisse Magsby, Juan Lastra Reyes, Kayla Eagle, Armine Kartahtan, Matt Hurley, Donald Ray Baumgartner, Maricela Perez, Angel Bravo, Serena Pagan, Laura Weisman, Jonathan Siegel, Joshua Robinson, Akili Polee, Lisa Crosby, Kenneth Tang, Anique Akhtar, Aaron Paulmoore, Daniel Kim, Syed Hussain, Mitch Ramsey, Michael Philips, Mostafa Aljabi, Neeraj Kumar, Erlys Nunez, David Dizayer, Maribel

- 4 -

**AMENDED COMPLAINT**

505

Godinez, Shuchi Gupta, Annie Yu, Michael Runyan, Michael Galusick, Abdul Aljabi, Gaurav Gour, Aj Canales, Manny Meneses, Angela Schechinger, Milan Nadzacko, Shadan Amini, Guadalupe Maldonado Andrade, Charles Jeon, Deomarie Sy, Gerard Pasaylon, Rodrigo Rivera, Leon Wuesday, Chao Zhu, Muhammad Rashid, Miguel Berganza, Abhijit Rao, Oshaneek Box, Nicklaus Tomlin, Bhaskar Kolla, Kamil Javaid, Armando Ferrufino Bonilla, Francis Ferrufino, Jose Silvano Aispuro, Jose Luiz Baez, Miguel Conrique, Jan Dustin Tengdyantono, Aaron Wali, Marouane Zouzhi, Sergio Pineda, Jesse Segrist, Sonya Hall, Eli Rogers, Nancy Nicholas, Elek Hendrickson, Sulma Vasquez, Nour Nasri, Anas Hajjar, Shriti Raj, Akshay Ramachandran, Stephen Kramer, Carlos Escobar, Hussam Jrab, Badih Arnaout, Mariana Zuniga, Mike Falah, Todd Dodge, Eduardo Vargas, Lisa Ross, Laila Dakelbab, Sonia Guevara, Lianna Townsley, James Lee, Junko Tanaka, Robert Davis, Jeffrey Wichert, Herbert Porras, Tyan Schesser, Trinidad Buenrostro, Michael Hart, Tiavia Sweeney, Yervant Malkhasian, George Alachouzos, Tianyu Zhu, Natacha Pagan, Ousama Alkahwaji, Benjamin Davis, Marco Antonio Villa, Nezar Hanania, Joe Carta, Mitchell Lawrenson, Bradlee Petzak, Traci Allison, Todd Dodge, Anthony Allen Bitar, Mohammad Qamar, Steven Raasch, Cody Messerer, Laura Vallejo, Ernesto Perez, Sara Ornelas, Dao Lee, Khao Nguyen, Brianna Macias, Maria Andrews, Lee Leon, Basem Istwani, Eric Wilcox, Kim Ho, Michael Beltran, Rebecca Hubbard, Ahmad Bosier, Irma Zaragoza De Garcia, Siham Abdulwahab, Kim Spalding, Keith Gartenlaub, Bayron A. Estrada Gonzalez, Tracey Fischler, Maricela Varela, Akhil Killawala, Dionysios Tsirkas, Walter Orellana, Christian Rodriguez, Luis Antonio Ornelas, Ali Malam, Josh Garcia, Nadia Nunez, Omar Khalid, Nawal Picos, Vivian Le, Nadjah Jones, Lisa Willis, Ashley Gomez, Kyle Steven Miller, Terry Cortez, Jun Hao, Armen L. Dallakian,

- 5 -
**AMENDED COMPLAINT**

Omid Rowshanzadeh, Cassim Malam, Andre Meyer, Mohammed Iklawi, Monica Gonzalez, Mazen Hajar, Alen Markryan, Leszek Dion-Wesolowski, Susan Dion, Bailey Livermore, Wayne Howren, Mark Amanfu, Anna Osipova, Dionysios Tsirkas, Meihong Zing, Silvestre Solano, Jeffrey Hallin, Albert Russell, Limo Ray, Danail Diviziev, Marriane Quintero, Margarita De Gonzalez, Daniel Sangronis, Sayed Hashimi, Isaiah Rogers, Ken He, Curtis Rogers, Antonello S. Dato, Rayan Altalli, Ashneel Prasab, and Jeff Ahn, individually and on behalf of all others similarly situated,

*Plaintiffs*,

vs.

Toyota Motor Sales, U.S.A., Inc.

*Defendants.*

## INTRODUCTION

This action arises from Toyota Motor Sales, U.S.A., Inc.'s fraud in the marketing, sale, and support of its Toyota Mirai hydrogen fuel cell vehicle. Plaintiffs, who represent diverse California consumers including military personnel, seniors, and working families, purchased Toyota's hydrogen-powered Mirai based on explicit promises of convenient refueling, environmental benefits, and practical usability. Instead, they received vehicles that are virtually unusable due to a critically deficient hydrogen infrastructure consisting of only 24 fuel nozzles across California, most of which are frequently inoperable.

Despite Toyota's intimate knowledge of these severe limitations through its financial and operational control of the hydrogen fueling network, Toyota continues to sell the Mirai while concealing its fundamental flaws: the inability to be fully refueled, the impossibility of achieving its advertised range, dangerously unreliable fueling stations, and environmental impacts worse than conventional vehicles. As Toyota aggressively markets additional Mirais to unsuspecting consumers, existing

- 6 -
**AMENDED COMPLAINT**

owners face mounting financial losses from vehicles that have depreciated approximately 90% upon purchase, cannot be reliably used, and place them in physically dangerous situations. Plaintiffs seek compensatory and punitive damages, rescission of their purchase agreements, injunctive relief to halt Toyota's continued fraudulent sales, and all other appropriate remedies for Toyota's deliberate violations of California consumer protection laws. Specifically, Plaintiffs plead as follows:

1. Toyota sells a car called the Mirai, in California, and only California.

2. The Mirai is not a gas car. The Mirai is not an electric car. It's powered by hydrogen. It cannot be charged at home, and it cannot be refueled at gas stations.

3. Despite the 15,000 Mirais that Toyota sold, ***there are only 24 fuel nozzles <u>in the entire state of California</u> for the Plaintiffs to refuel their cars.*** One cannot refuel this Mirai any other way.

4. The scant hydrogen fuel stations are down for maintenance more than they are operational. So, **stations are not available *most* of the time**.

5. A Toyota hydrogen partner for example, Iwatani, admits that its pumps are faulty, and they're plagued by constant breakdowns.

6. Toyota's other hydrogen partner (literally a partner in every sense as Toyota funds them as is part of the California Fuel Cell Partnership with them), True Zero, has hydrogen stations that close down with higher frequency than the Iwatani stations.

7. The California state hydrogen fueling standard (that Toyota invented and imposes) ***ensures*** that pumps will not function as advertised in California's real-world conditions. Toyota markets hydrogen fueling as "just like gas" and promises that it will take "approximately five minutes"—a claim detached from reality because in California's actual climate, the fueling process is certain to meet delays, systemic malfunctions, and station shutdowns. Toyota's own fueling standards

- 7 -
**AMENDED COMPLAINT**

508

blatantly acknowledge that in everyday California weather, refueling will not only take significantly longer than five minutes but is likely to result in station failures.

8.    Toyota tells Plaintiffs to rely on an online fuel map in their car or on h2fcp.org to find fuel and their in-car map app and the h2fcp.org map provides inaccurate data, which sends the Plaintiffs on long drives for fuel only to be turned away when they arrive at a pump, and its down.  Plaintiffs must leave their cars there at a station or get towed often because of this alone.

9.    The Mirai's lack of reliable fueling opportunities compromises Plaintiffs' physical safety.  Most Plaintiffs cannot use the car at all and none can reliably use it.

10.    The lack of reliable fuel is something Toyota has known about for years, through hundreds of lawsuits filed, thousands of written and telephonic complaints from customers and because they sent independent contractors to monitor stations.  Toyota in 2019 acknowledged a complete shortage of hydrogen fuel and forgave six months' worth of car payments for their generation 1 Mirais.  However they refuse to do this for recent customers who have more fueling issues.

11.    Another fraud with this car is that the Mirai NEVER achieves 402 miles as advertised.  Plaintiffs are different consumers all across the state from different walks of life and circumstances.  Yet every single Plaintiff.  Again every single plaintiff will testify that they don't achieve anywhere near the mileage promised for the Mirai and that the mileage promise was a substantial reason they purchased the Mirai.

12.    Plaintiffs suffer tremendous financial and mental strain every month they must pay for a vehicle with zero residual value (these cars immediately depreciate by about 90 percent after purchase) that they cannot reasonably use.

13.    As Toyota continues to sell the Mirai, physical, financial and mental health damages compound.  As Toyota sells hydrogen fueled vehicles, each additional vehicle exacerbates the existing customers' lack of access to fuel.

- 8 -
**AMENDED COMPLAINT**

14.   Toyota keeps the Mirai sales going with lies to consumers in the dealerships.  Toyota sales agents lie that the hydrogen fueling network will be country-wide, they provide superficial incentives, they say you can just trade it in after a year if you don't like it, they say it's like a prius and will become the next big thing, etc.

15.   Toyota had passed around a written one-page flyer that showed that more stations will be built in California (that never opened) and extolling the virtues of hydrogen fuel to entice people to buy the Mirai.  They first gave this flyer out when Toyota was headquartered in Torrance, CA to the employees on their campus to convince them to buy a car and then dealerships across the state used this flyer to promote the sales for this Mirai.

16.   Toyota's hydrogen initiative is marketed as environmentally friendly, and the hydrogen fuel used in the Mirai has severe environmental harms.

17.   The production and storage of hydrogen emits harmful carbon at a rate higher than other car fuel energy source.  Toyota's hydrogen is derived from methane a process that releases substantial carbon dioxide and perpetuates reliance on fossil fuels instead of making hydrogen from water as their marketing insinuates. Toyota's deliberate obfuscation of these facts exposes a cynical attempt to greenwash a technology that is fundamentally at odds with the state's environmental goals.

18.   The California Energy Commission has funded station after station after station after station for True Zero at Toyota's behest; wasting a cool $1,451,000 in taxpayer money for every station built.

19.   These hydrogen stations close within a year, and we never hear from anyone about this wasted money.

20.   During this process in throwing money away for Toyota to build this pollution powered lie, the California state government allowed Toyota to bully hydrogen fuel operators that didn't accede to their total control.

- 9 -
**AMENDED COMPLAINT**

21. For example, the California State University, Los Angeles ("Cal State") applied for a California state grant, so that Cal State could build a clean hydrogen fuel station. And it did. It created the only truly green hydrogen fuel station.

22. Cal State was approved by the California Division of Measurement Standards (DMS); with a seal of approval from the DMS for their pumps.

23. Cal State's hydrogen fuel station earned this seal of approval by passing rigorous tests for accuracy as to amounts dispensed and charged to customers; fire system protections, etc.

24. Many vehicles began to fuel at Cal State's clean hydrogen pumps. According to the fueling standard used by Toyota, this is sufficient to allow use of these pumps but Toyota did not follow this rule.

25. After the DMS awarded approval, the Cal State's pumps were added to the station map website, h2fcp.org/stationmap. The website h2fcp.org/stationmap is a main source for hydrogen fuel car drivers to know where they can fuel their cars.

26. This h2fcp.org/stationmap website is officially run by the aforementioned weird creature called the California Fuel Cell Partnership.

27. The California Fuel Cell Partnership is a weird creature because it's a quasi-governmental entity that is truly run by Toyota.

28. Shortly after Cal State was added to h2fcp.org/stationmap informing drivers they could fuel at Cal State, Toyota forced the Hydrogen Fuel Cell Partnership to remove Cal State's fuel station off the h2fcp.org/stationmap.

29. Michael Dray represented Cal State on a conference call with the Hydrogen Fuel Cell Partnership about Cal State's removal from the website.

30. On this conference call a man named Spencer Quan, an engineering consultant that worked for Toyota said, "it takes a lot of guts to say your [hydrogen

**AMENDED COMPLAINT**

511

station is] open to the public." To which Michael Dray responded, "but we are."

And Spencer Quan replied, "no you're not, because Toyota vetoes that.".

31. Before and after that conference call, Spencer Quan ratcheted pressure on the Hydrogen Fuel Cell Partnership, and the California Air Resources Board, to remove Cal State's fuel station from h2fcp.org/stationmap.

32. Michael Dray received intense pressure from personnel with the California Air Resources Board to force him to agree to be removed from h2fcp.org/stationmap.

33. Michael Dray resisted this removal off the website, because as a taxpayer, citizen, and public employee, he knew that it was in the public's interest that Cal State's $6 million clean hydrogen station paid for by California taxpayer and philanthropic money be available for public use and known to the public.

34. It became explicit that if Toyota would not approve Cal State's clean hydrogen station, then Cal State would have no customer base anyway, so Michael Dray acquiesced to be removed from the website, with an agreement that Toyota would visit Cal State's clean hydrogen station and eventually approve it and put it back on the website.

35. Over the next five years Honda and Hyundai allowed the use of Cal State's clean hydrogen station for its drivers, but Toyota refused to approve the station for its drivers or visit. This violates Toyota's own principle "Genchi Genbutsu (English: Go and see for yourself): The best practice is to go and see the location or process where the problem exists in order to solve that problem more quickly and efficiently."

36. Toyota did visit the station a couple times over the years. They would visit the Cal State station because they could force Mr. Dray to override some safety features and allow the Mirai tanks to get a full fill. They would then take these fully filled cars to the regulators to have them test drive it to obtain the EPA certification on mileage.

- 11 -
AMENDED COMPLAINT

512

37.    Toyota's grip became so nefarious that numerous individual hydrogen station owners had a meeting to discuss what to do about Toyota's ironclad control and retroactive new standard, and at that meeting Michael Dray suggested that the station owners form an association, and the CEO of First Element agreed with Michael Dray.

38.    Nothing ever came from that meeting. Shortly after, Toyota loaned True Zero over $25 million.

39.    Consequently, the largest hydrogen fuel station operator in California, with over 50% of the market share, is, and was beholden to Toyota financially, as a debtor.

40.    From that point on, First Element (i.e. True Zero) stations were instantly approved, and added to h2fcp.org/stationmap overnight as they were built, but not Cal State's clean hydrogen station and other private pumps.

41.    When Toyota first came out with this new retroactive SAEJ260 standard, Toyota said they won't use it as a hammer, and it would serve only to enhance performance. Toyota did the exact opposite.

42.    Toyota forced Cal State to spend millions of taxpayer dollars over the years, to meet a standard that was nonexistent when Cal State's hydrogen station was built and approved by the state and other car manufacturers.

43.    Cal State spent years and millions to meet Toyota's never-ending demands.

44.    Throughout this time, Honda and Hyundai continued to allow their drivers to use Cal State's clean hydrogen fueling station, but Toyota did not.

45.    The harassment and threats by Toyota increased.

46.    Toyota, in meetings with their engineers, and Michael Dray and his consulting engineers, threatened to have the California government shut down the Cal State LA's clean hydrogen fueling station, if the university didn't jump through all their hoops.

- 12 -
**AMENDED COMPLAINT**

513

47. Eventually through state pressure and prevention of customer use, Toyota did shut down the Cal State station.

48. Toyota shut the taxpayer funded Cal State pump down because 1) it was using clean hydrogen and Toyota wants to use dirty hydrogen only and 2) because they never loaned it money so they couldn't fully control the station from the inside.

## HORROR STORIES FROM MIRAI CUSTOMERS

49. Each of the named Plaintiffs experiences fraud by Toyota. Each of the named Plaintiffs suffer from the extreme lack of hydrogen fuel which prohibits use of their purchased vehicle and a myriad other issues.  For example every named Plaintiff has experience moderate to severe mechanicals failures of the Mirai especially excessive battery drainage or the Mirai will randomly stall while driving.

50. Some specific emergency situations created by Toyota's continued sale of its Mirai and lies are detailed below and these Plaintiffs would serve as excellent bellwether plaintiffs.[1]

## ZACHARY GRAHAM

51. Zachary Graham serves the United States Marine Corps as a Second Lieutenant.

52. In 2017, Mr. Graham exchanged a broken-down Honda Civic for a brand-new Camry lease with Toyota of Temecula.

53. Mr. Graham entered a lease for the brand-new Camry on condition that if he received military orders to relocate for military duty he could return the new Camry to Toyota of Temecula.

---

[1] Some dealerships had customers sign a fraudulent disclaimer about hydrogen fuel that aims at insulating Toyota from liability of a lawsuit.  The following highlighted Plaintiffs never signed any such disclaimer about hydrogen fuel.  Any disclaimer that Toyota gave to Plaintiffs is replete with its own misleading statements and makes the hydrogen fuel situation seem more viable than it is.

- 13 -
AMENDED COMPLAINT

514

54.    In 2018, Mr. Graham received military orders to relocate to Okinawa, Japan.  As promised, Mr. Graham was able to return the Camry to Toyota and terminate his lease.

55.    This deal was extremely satisfactory for Mr. Graham. It bolstered his trust in Toyota's brand.

56.    Fast-forward to 2023: Mr. Graham returned to the states and was living in California.  He was in the market for a new car.

57.    In response to a query submitted through an online chatbox that pops up on the Toyota of Santa Monica's website, he received an email from toyotasantamonica@toyotasantamonica.com, that read: "Good afternoon, Zach! This is Will Jannace from Toyota Santa Monica.  I see that you are interested in leading the 2023 Corolla! That's great! When can you make it down for a test drive?  Let me know! Best, Will Jannace Toyota Santa Monica (424) 291-4577."

58.    Mr. Graham visited Toyota Santa Monica on June 23, 2023, with intent to trade in his then current new

59.     Honda Civic to lease a brand-new Toyota Corolla.

60.    Upon arrival at the Toyota Santa Monica dealership, he met with the same sales associate that had emailed him about his query for a Corolla.

61.    Off the bat, Mr. Graham told said Toyota sales associate, Will Jannace, that he was in the military and required flexibility to return the vehicle if he's stationed out of state.

62.    Will Jannace was explicit that this could be accommodated, and he proposed a finance agreement for a 2023 Toyota Mirai, highlighting several incentives, including free hydrogen fuel, in the form of a fueling card to pay for fuel at the pump.

63.     During this sales process, the sales manager, Paul Yerkanyan, touted the benefits of the Mirai to Mr. Graham, including the benefits to the environment

- 14 -
**AMENDED COMPLAINT**

515

and the explicit promise of free hydrogen fuel, and that refueling hydrogen is an easy straightforward process.

64.    Based on these incentives and assurances, Mr. Graham agreed to purchase the Toyota Mirai for an expensive $42,358.93.  The promise of free fuel made the expensive purchase make sense to Mr. Graham.

65.    Quickly after the purchase, Mr. Graham discovered that fueling the car with hydrogen fuel is practically not possible.

66.    For example, when there are cars ahead of him at a fuel station it takes well over an hour to obtain any fuel.  This is because there's a long wait in between each customer for the pump to recompress and dispense fuel and the pumps never fill the car up totally.

67.    The website h2fcp.org/stationmap is a primary exclusive source for information on where to find hydrogen fuel, and it's not accurate.  More often than not, the map says a fuel station is available, when it's not.

68.    Sometimes stations are not only down; they're unsafe.

69.    At 11 p.m. one night, a station in Santa Monica was marked as "active" as denoted by a "green" signal on the station map website, and when Mr. Graham attempted to connect the pump, it wouldn't fully latch into the vehicle.

70.    Despite efforts to secure it, the nozzle eventually flew off the handle and like an out-of-control garden hose went haywire, after hydrogen began dispensing.  Mr. Graham hit the emergency button to shut down the station.

71.    When Mr. Graham called the number on the pump for assistance, he was told that the station would need at least a day under maintenance for it to come back online.

72.    Mr. Graham was left with almost no fuel in his car.

73.    At this point, it's around midnight, and Mr. Graham was required the next morning to participate in military physical training and naval science labs,

**AMENDED COMPLAINT**

516

early in the morning.  Now he had added pressure to find fuel somehow before those duties (and not run out of fuel in search).

74.    Mr. Graham then travelled to Van Nuys for fuel which only gave him a sixth of a tank before stopping to provide fuel.  He had to travel to another pump to fuel.

75.    This sort of experience was frequent.

76.    Moreover, soon after he bought the vehicle, he learned that hydrogen fuel stations are exclusively located in California.

77.    This stifling fueling limitation was not disclosed to Mr. Graham by Jannace, Yerkanyan, or any other personnel at the dealership during the sales transaction or otherwise.  Further, nothing in Mr. Graham's paperwork he signed with Toyota discloses this critical fueling limitation.

78.    Mr. Graham is under military orders to leave California and has left to Virgina, where he cannot bring his car with because there's absolutely zero fuel out of California.

79.    Prior to leaving the state on military orders, on June 18, 2024, Mr. Graham returned to Toyota Santa Monica and inquired about trading in his vehicle.

80.    He was informed that his outstanding balance on the loan was $35,887 and the vehicle's appraised value was $11,000, leaving him with negative equity exceeding $24,000 after less than a year after the purchase.

81.    Mr. Graham must pay for a car that had expensive monthly payments that he absolutely cannot use and cannot resell.

82.    As a marine, Mr. Graham must retain a good standing financial record to maintain his military position and security clearance.

83.    This situation jeopardizes his financial situation, which threatens his security clearance.

84.    Mr. Graham earns substantially less money now that he's in Virginia.

- 16 -
**AMENDED COMPLAINT**

517

85. This situation is extremely stressful for him. See his declaration attached hereto as Exhibit B.

86. Mr. Graham thought that he had a work-around to all this by having his friend micro-lease the Mirai on an app that facilitates short term car rentals, so that the income could be used to pay off the high monthly payment on the car ($800 with insurance payments).

87. As he and his friend attempted to list the car on the app – called Turo – the app informed Mr. Graham that Toyota must address a concerning outstanding safety recall before the Mirai could be listed for rentals.

88. Now in Virginia, Mr. Graham must lease another car to run errands and drive to and from to his base.

89. The mounting stress of this financial obligation is distracting Mr. Graham from optimizing his opportunity to serve his country and excel in his military career.

90. This is exacerbated by the fact that when Mr. Graham asked Toyota brand management and Toyota of Santa Monica for a stay on the loan or a buyback, they punted the issue with vague nonresponsive information.

91. Due to the stress and inability to make monthly payments on a car he literally cannot use, Mr. Graham was forced to take out a loan to pay for the vehicle and did take out a $25,000 loan to payoff the remainder of the vehicle and return in to Toyota of Santa Monica.

92. Mr. Graham went into a Toyota dealership to lease a Corolla, because of his confidence in Toyota's brand and was directed to buy the Mirai, which is ruining his life, with continued stress and now interest payments on the loan he had to take out to pay for his car.

93. Mr. Graham tried to mitigate the negative equity in his car by facilitating short term leases of the car. The app refused to post the car for lease as an unaddressed safety recall fails its threshold requirements.

- 17 -
**AMENDED COMPLAINT**

518

94. Consequently, Mr. Graham suffers ongoing mental stress due to this situation.

### JAIME NAHMAN

95. Jaime Nahman is a 77-year-old resident of Topanga Canyon, California.

96. Mr. Nahman owned multiple Toyota/Lexus vehicles over the years: two Lexus ES 300 models and two Lexus ES 350s; he had purchased two of those from the Santa Monica dealership company where he bought the Mirai. Additionally, he owned a Toyota Camry and two other Lexus ES models as well as a Toyota Landcruiser.

97. Since Mr. Nahman had previously purchased Toyota vehicles and from the dealership company that sold him the Mirai, he could not anticipate that Toyota of Santa Monica would sell him such a well-known brand name that's a dangerously unreliable car.

98. Prior to the purchase of the Mirai, he was in the market for a new car, and he had a friend that mentioned that Toyota had this incredible deal where they're knocking $40,000 off their new fuel cell car.

99. Mr. Nahman went to Toyota of Santa Monica to inquire about this deal with his wife, and when they mentioned to the greeting sales associate that they were interested in the Mirai he said, "let me get Daniel."

100. Daniel was a more senior sales associate.

101. Daniel claimed he owned a Mirai, and he told Mr. Nahman that a lot of people that worked for the Santa Monica dealership owned and loved their Mirai.

102. Critically, Daniel explicitly and repeatedly juxtaposed the Mirai to the Prius.

- 18 -
AMENDED COMPLAINT

103.   Daniel told Mr. Nahman that the Mirai was going to take off like the Prius and said it was a great deal like the Prius and that Mr. Nahman was lucky that he was getting in early!

104.   Daniel made an explicit promise to Mr. Nahman and his wife that within one year hydrogen stations will be everywhere, even outside California.

105.   To push the sale, Daniel and his coworkers emphasized references to the Toyota Prius, for example, they said things like "you know the Prius sold at below market pricing too" and that this Mirai is going to spark an entire industry, like the Prius.

106.   The energy in the room was that Mr. Nahman was getting in on the best deal on the planet in line with Toyota's marketing slogan for the Mirai which states the same.

107.   Mr. Nahman asked the sales personnel about refueling opportunities, and Daniel impressed Mr. Nahman with his personal statements about how he always easily obtains fuel with his Mirai.

108.   Daniel made it seem like hydrogen fuel is available everywhere.

109.   Daniel made references to how hydrogen is the most abundant element, and he showed Mr. Nahman an app with what appeared to be many hydrogen stations in development.

110.   So, they took the Mirai for a test drive where the sales folks showed off all the bells and whistles (e.g. a self-parking feature, which he could not use on his own post-sale).

111.   After the test drive and initial conversation, over three hours had passed.

112.   Mr. Nahman said he was ready to move forward, and Daniel says he must bring in his "finance guys" to close.

113.   Mr. Nahman exclaimed how the sales process was dragging on and Toyota continued to drag it on, as a tactic, offering him and his wife beverages and

- 19 -
**AMENDED COMPLAINT**

vapid schmoozing, repeating how this sale is a process and Mr. Nahman and his wife are lucky to be part of it for such a great deal.

114. Finally, after much more time passed, they bring out a "finance guy" who was fast talking with numerous documents in hand and pointing to places for Mr. Nahman to sign.

115. By the time Mr. Nahman got to speak with the finance associate, over four hours had passed, and he was exhausted.

116. Originally, Mr. Nahman anticipated paying a lot less for the Mirai, as the advertised rebate and good deal is what drew him into the idea of the Mirai and dealership in the first place.

117. It became apparent that many items that would conventionally be included in the car, like internet and security, were only add-on features that he paid for.

118. Mr. Nahman was rushed and pressured towards the end of the sales process into buying additional services and coverage that he did not understand.

119. For example, it was only later that Mr. Nahman discovered the Mirai's invasive data collection practices, including photographing passengers and recording conversations.

120. Mr. Nahman also learned that the Mirai records an unprecedented amount of various data, including car speed, lane changes, traffic violations, and photographs of the driver and passengers. This data is uploaded to Toyota for sale to insurance companies. Despite contacting Toyota for software updates to address some of these issues, Mr. Nahman has not received a resolution.

121. Opting out of data collection results in the loss of certain features, such as the car's self-driving capabilities. The entire system is designed to monitor and control the driver's actions, which is intrusive.

122. This information was not disclosed to Mr. Nahman at the time of purchase, and Mr. Nahman's privacy was violated.

- 20 -
**AMENDED COMPLAINT**

521

123. Mr. Nahman came to learn that if he'd stop Toyota from collecting personal data and selling his personal data, he could lose basic functions of the car like its navigation system.

124. More to the point regarding paying much more than he originally thought or intended: The car's original list price for the car was over $70,000, but the $40,000 rebate wasn't actually $40,000, unless the top of the line new Mirai was purchased, which he didn't buy. The rebate scheme was confusing and led to Mr. Nahman paying more for the car than intended.

125. Another point of fraud was that all the Toyota sales associates were heavily lauding the eco friendliness of the Mirai to excite Mr. Nahman about his purchase. The Toyota sales associates repeatedly touted the fact that one can drink the exhaust of car, and made it sound like the hydrogen fuel used to fuel the car was made from water.

126. They used the analogy that if you were stuck in a desert, you could drink the water from the exhaust of the car.

127. After entertaining litigation against Toyota, Mr. Nahman discovered that Toyota's production of hydrogen fuel is highly polluting. He was misled about the environmental benefits of the car, as there are none.

128. Mr. Nahman was also assured by the salespeople that more hydrogen stations would be opening, making fuel cheaper. However, the reality is opposite, with unreliable stations and outrageous fuel prices. The promise of dropping fuel prices has not materialized.

129. To summarize the Toyota salespeople's, express false promises about the car that induced Mr. Nahman to buy the car thus far: They said the car is eco-friendly, it's not; they said that fuel is available anywhere in California, it's not; they said that fueling is easy, it's not; they said it was a good car, it's not.

130. As important is the fact that the car's advertised mileage claims are misleading. The per-mile cost of hydrogen is significantly higher than gasoline,

**AMENDED COMPLAINT**

522

and the supposed 63 miles per kilogram equivalent is not accurate. Mr. Nahman never achieved even 300 miles on a fuel-up and he was promised over 350. His max has been 286 miles. Again, at the point-of-sale Toyota representatives kept talking about how much better mileage the Mirai is than a gas car in terms of fuel efficiency.

131. Mr. Nahman paid a whopping $61,215.18 for his Mirai after any rebates and discounts.

132. Mr. Nahman was targeted because of his age and history purchasing expensive cars from Lexus/Toyota (his prior purchases were mentioned at the top of the sales process); they saw a big fish and worked him over.

133. Mr. Nahman does not use the car anymore because has anxiety every time the Mirai's fuel level drops below half a tank, as he must start looking for fuel. The stations are frequently out of service or out of fuel, and the supply of hydrogen is unreliable. Since purchasing the car over a half a year ago, he's only driven it about 1,400 miles, with a substantial amount of that in pursuit of fuel.

134. On numerous occasions, on the website, the station closest to his house is green and shown as available, and by the time he arrives to the station it's down.

135. Attached to his accompanying sworn affidavit is a collection of screenshots from nearly every day since August of the hydrogen fuel station map recommended to use by Toyota to find fuel. You'll notice that there's a lot of red dots on these maps. The red dots indicate that a station is down. There are more red dots than green dots. What's more is, as mentioned, the green dots are not accurate. Very often when Mr. Nahman goes to the station closest to him that indicates it's "green" the station is not in service.

136. Mr. Nahman tried to obtain fuel at a pump located at Cloverfield twice. One of the times another woman's car was stuck in front of the pump, as her car was completely out of fuel, and she was blocking the pump.

137. On more than one occasion when he went to the station located in Woodland Hills for fuel it was out of order. Mr. Nahman would call the service number and sometimes the representative would answer the call and reassure him that someone would service the machine within a few hours. However, when he went back to the station the next day, the pump would still be inoperable.

138. Critically he simply never can fully fill the tank, even when a station is working fully. Yet, the fuel gauge gives the impression it's full.

139. Further leading to his anxiety and uselessness of the car is the fact that the pump nozzle will often freeze onto the car.

140. The pump itself is sort of like a shotgun. The pump sleeve freezes on the pump and Mr. Nahman must wait for an indeterminable amount of time for it to warm up.

141. Here's two additional specific incidents that demonstrate the car's danger related to electrical issues: on August 28, 2024, Mr. Nahman had to wait for five hours when the car wouldn't turn on and ultimately needed to be towed for service.

142. Mr. Nahman had stopped for lunch with his wife at the Beachwood café located at 2695 N Beachwood Dr, Los Angeles, CA 90068.

143. When they finished lunch, he pushed the start button and the Mirai would not turn on, and it would not release the breaks, which had locked up.

144. After a few attempts at turning on the car, the interior screen went black, and there was no feedback from the car.

145. So now Mr. Nahman, age 77, is stuck in a heatwave, in the Hollywood hills, with a car that won't turn on, without any notice.

146. So, Mr. Nahman desperately attempted to turn the car on and off, and he managed to get it to turn on such that he could unlock the break momentarily and the car remained in a neutral setting such that he was able to move the car to park it in an area where a tow truck could collect him and his wife.

**AMENDED COMPLAINT**

147.   When he got a chance to move it, the Mirai screen read "vehicle system issue" and it explicitly stated that the car is not ready to drive.

148.   A tow truck arrived.

149.   After more than one attempt Mr. Nahman hit the start button again and the Mirai allowed him to drive it up the bed of the tow truck.  Next, he and his wife rode in the tow truck and ended up at Toyota after they were closed at 8 pm and there was no loaner.

150.   A loaner was part of the written and oral deal, and yet, when he called Toyota of Santa Monica when the Mirai broke down (while Toyota of Santa Monica was open) they said they don't have loaner for him.

151.   Next, he called Toyota of Glendale for a loaner vehicle, and they said they don't have a loaner vehicle available either.

152.   They finally arrived with the tow truck late that night to Toyota of Santa Monica.

153.   Ultimately, Toyota of Santa Monica said there's nothing wrong with the Mirai.

154.   Mr. Nahman suggested to Toyota that a battery issue existed.  The Toyota of Santa Monica service folks rejected this idea.

155.   The next day Toyota of Santa Monica sent him an Uber to come collect the car.

156.   The dealership said to him that the battery is low, and that he must've left something on in the car to have drained the battery.

157.   Mr. Nahman responded 1) that he left nothing on, and 2) he's certain of this because he doesn't even have his headlights on automatic; it's either on or off, and finally 3) the Mirai has a feature that tells the driver if something was left on, and there's no way to deal with that other than to turn whatever is left on, off.

- 24 -
**AMENDED COMPLAINT**

525

158.   Another disturbing incident occurred on September 5, 2024: Mr. Nahman and his wife were on the way to physical therapy, which they missed because the car randomly turned off.

159.   Mr. Nahman was driving on Topanga Canyon Boulevard, Highway 27.  The city is doing heavy roadwork there, literally carving up the road.  Traffic is limited to one lane with a constant city flagman posted there to direct the narrow traffic.

160.   Mr. Nahman was a couple cars behind the flagman, and he knows from experience that it takes approximately 15 minutes for traffic to clear to allow him move the car.  So, he turns the car off while waiting in the thick traffic.

161.   The car then refuses to turn on.  The car again locks up with the breaks jamming up everything including the steering wheel.

162.   There were many cars behind Mr. Nahman and they began to profusely honk at him and he tried waiving them around.  This was extremely stressful.

163.   The city flagman was kind. He came by and moved cones and helped direct traffic to move around his car.  Then Mr. Nahman had to stay sat there for over an hour in extreme heat (109 degrees F) as the air conditioning wouldn't work at all while the car was unresponsive.

164.   The tow truck driver provided the Mirai battery with some juice, and Mr. Nahman was able to drive it on the tow truck flatbed.

165.   When Mr. Nahman arrived in Toyota of Santa Monica the sales guy says to Mr. Nahman that the problem with his Mirai is that he "doesn't drive the car enough."

166.   This is a lie because the first time it stopped working, Mr. Nahman had been driving the Mirai a lot.

167.   Additionally, if the car needs to be driven a lot or it will randomly die, then Toyota must advertise that one must drive it 40 miles a day, or it will die.

- 25 -
**AMENDED COMPLAINT**

168.   Toyota had the car for a while in service.  Finally, they acquiesced and said that the car's battery was defective.  The exact issue Mr. Nahman had asked them to investigate the first time, which they ignored.

169.   Mr. Nahman has zero confidence in his Mirai.   He lives in a canyon where driving uphill with a car that randomly turns off and runs out of fuel is not feasible.

170.   Mr. Nahman was lied to as Toyota representatives told him this car was a better version than a Prius and it's not, it's ruining his life.

171.   The Mirai is a menace to Mr. Nahman; worse than useless.

172.   The car is not worth $15,000 on the market now and they sold it to him only months ago for $61,251.18.

173.   He pays Toyota every month or they would kill his credit score.  See his declaration attached hereto as Exhibit C.

## JANE DOE

174.   Jane Doe bought a Mirai for her family and her work duties from Toyota of Santa Monica.

175.   Mrs. Doe hasn't used her car in months, in part because it has less than 50 miles of fuel left which precludes her ability to comfortably drive to obtain fuel without concerns that she'll run out along the way, especially as the fuel stations that say they have fuel often don't.

176.   Mrs. Doe was under the impression that she was helping the environment by buying this hydrogen vehicle.  She's not.  The way Toyota makes their hydrogen, they pollute the environment worse than using a gas or electric car.

177.   The dealership also explicitly told her that she'd get a $15,000 fuel card for free hydrogen fuel which would last her six years.  That six-year promise is a lie because hydrogen prices have tripled since she purchased the car.

178.   During the sales process, the dealership kept promoting how safe and convenient the Mirai was, and that hydrogen fuel was always available.  They

**AMENDED COMPLAINT**

527

never mentioned, not once orally or in any paperwork, any current or potential problems with hydrogen fuel.

179.   They were able to convince her everything was okay because most of the salespeople told her that they own Mirais and everything is actually as they say.  Their personal statements, and the strength of Toyota's brand duped her.

180.   The sales agents neglected to tell Mrs. Doe that the pump nozzle often freezes onto the Mirai and that you're going to have prodigious issues disconnecting the nozzle when it freezes on the car.

181.   Again, the demonstration was performed with a fake fueling pump, not a real pump.  The fake pump didn't pump and cannot pump any fuel at all.

182.   Mrs. Doe has experienced the pump nozzle freezing onto her car at least 1 out of 3 times she fuels.  In the winter, it's every other time that she fuels that the pump nozzle freezes on the car.

183.   She often cannot physically unlatch the frozen nozzle off the car.

184.   Mrs. Doe, like many drivers, always keeps a towel or handwarmer in her Mirai to rub on the pump so she can warm the nozzle off the car to increase the odds she may disconnect it.  She's scared to put something hot on the pump to unfreeze it since the reaction may lead to a fatality.

185.   Mrs. Doe has been stuck at the pump late at night and at different times because the nozzle freezes on the pump.  The pumps are often in a poorly lit location and not safe at night.

186.   People get desperate when they're very low on fuel and waiting for hours at their last hope to obtain some fuel. Mrs. Doe has been at stations where heated arguments have spun out of control at hydrogen fuel pumps between agitated drivers waiting for fuel for long periods of times.  Mrs. Doe has seen tow trucks tow in cars and muscle their way to cut the line to back in their trucks to the pump so the towed car can obtain fuel.

187.   The car puts her in unsafe situations.

- 27 -
AMENDED COMPLAINT

528

188. Mrs. Doe has been stranded at pumps for hours needing a family member to come pick her up late at night.

189. Mrs. Doe purchased it because of the rebate and free fuel and in reality there's no value given since she can't drive the car, it causes her anxiety when she does, and it's unsafe.

190. What's more, very often the pump will not dispense more than a fifth of a tank at a time. This is because when there's a long line the pumps will automatically ration the amount of hydrogen it dispenses. In fact, the pump's reader will tell the customer that it's normal for it to stop and that it can't pump out any fuel.

191. The pump closest to Mrs. Doe's house (2 miles away) is often down for many days at a time and again the information about whether the further stations even fuel is often incorrect.

192. At the point of sale, the Toyota sales agents told her and showed her a map that hydrogen fuel stations would be opening; that's been the opposite as stations have closed.

193. Another value draining unsafe element of the car is that the wireless charging pad heats up her iPhone to a burning point that it can't be used.

194. Mrs. Doe went to have her car serviced in Orange County three times and complained about the fact that the fuel tank is never full. The dealer's agents reassured her that there are no issues, and that additional new fuel pumps are imminent.

195. The sales agents and dealer service agents also reassured Mrs. Doe that she would achieve 360+ miles on each fill up but she never achieves that amount and more often than not the pump doesn't dispense a full tank's worth for her.

196. The wait time for fueling was never discussed with her and often getting whatever fuel she can takes hours upon hours. Doe figured she'd outsmart

- 28 -
**AMENDED COMPLAINT**

529

the wait times and wake up super early on weekends to beat the other cars to get fuel but that doesn't often work.

197.   In short, Mrs. Doe is put in unsafe situations because of this car and was lied to about availability of fueling, ease of fueling, mileage range, fueling capacity and eco friendliness of the car.

**JOSE SALINAS**

198.   Jose Lino Salinas' native language is Spanish, he doesn't speak English.  He is approximately 74 years old today.

199.   On or about July 2022, Mr. Salinas purchased a 2022 Toyota Mirai at the Toyota of Orange dealership, located at 1400 N. Tustin Street, Orange, California 92867.

200.   The salesperson informed Mr. Salinas, who was not at first looking at the Mirai as an option, that the Mirai was a phenomenal deal.  The salesperson explained that the Mirai uses hydrogen fuel, and he clicked into an online app that showed him the locations of hydrogen stations.

201.   Upon reviewing the app, it became apparent to Mr. Salinas that there were a few stations nearby where Mr. Salinas lived.

202.   Mr. Salinas communicated to the salesperson that the few fueling stations may be a problem, but the salesperson reassured him that many more stations would be built for the convenience and well-being of users.

203.   Following the purchase of the Mirai, Mr. Salinas continued to use the Mirai, and began experiencing problems due to a lack of fuel and technical failures in equipment.

204.   The salesperson had recommended that for convenience given the location of Mr. Salinas' home, he should refuel at the service station located at 11807 Carson Street, Hawaiian Gardens, California.

205.   However, that station was usually inoperative.

- 29 -
AMENDED COMPLAINT

530

206.    Faced with these inconveniences, Mr. Salinas had to go to two other more distant hydrogen fuel stations. The closest hydrogen fuel station was in Orange, California, which required a minimum 25-minute trip from his residence.

207.    Additionally, the process of fueling the Mirai took approximately one hour each and every time.

208.    This lengthy fuel process (hunting for fuel and actual fueling time) affected his finances and placed time constraints on his life, which he reported to Toyota as well as to an operator reached via the phone number denoted at the stations.

209.    This situation caused Mr. Salinas tremendous anxiety, rooted in constant concerns about a lack of fuel, an expensive useless purchase and the feeling that he was deceived into buying a car he's unable to use.

210.    For that reason, Mr. Salinas wrote a letter to Toyota of Orange detailing all the problems with the Mirai in the hopes of resolving this issue.

211.    On April 27, 2023, Mr. Salinas visited Toyota of Orange with the intention of delivering the mentioned letter.

212.    The manager, Jose Espinoza, who spoke Spanish, did not want to accept Mr. Salinas' letter stating that they did not accept those types of letters. Mr. Salinas insisted and he eventually received and read it.

213.    Having received and read the letter, Mr. Espinoza and salesperson Lucy Reynoso invited Mr. Salinas to an office to have a conversation. Mr. Salinas reiterated the problems with the Mirai and mentioned his intention to return it.

214.    The manager, Mr. Espinoza, informed Mr. Salinas that returning the vehicle would negatively affect his credit score. Mr. Salinas explained that he felt deceived and needed to return the Mirai.

215.    Seeing that his decision was final, Mr. Espinoza suggested that instead of returning the Mirai, Mr. Salinas should consider getting another vehicle to avoid potential credit issues.

- 30 -
**AMENDED COMPLAINT**

531

216.   Mr. Espinoza suggested that Mr. Salinas get a Toyota Camry, which uses gasoline, as a replacement for the Mirai. He explained that this would be considered a trade-in and would not affect Mr. Salinas' credit.

217.   Based on Mr. Espinoza's representation, Mr. Salinas agreed to discuss more options with the dealership. Thereafter, Mr. Salinas signed a form in English returning the Mirai and the new purchase contract for the Toyota Camry which was also in English.

218.   After signing both documents, Mr. Salinas left the Mirai at Toyota of Orange assuming the Mirai's contract was canceled as agreed.

219.   However, after about a month, Mr. Salinas received letters and phone calls from Toyota Financial informing him that he still owed money for the Mirai, which he had already left at Toyota of Orange.

220.   Mr. Salinas was confused by the communications he was receiving from Toyota Financial and decided to call Toyota of Orange to speak with Jose Espinoza in Spanish about the matter.

221.   During his phone conversation, he expressed concerns about the calls from Toyota Financial and their statement that there was a remaining debt.

222.   Mr. Espinoza insisted that Mr. Salinas should not worry, and that he should not answer the calls as Toyota Financial will eventually stop.

223.   Concerned about the situation, Mr. Salinas contacted Toyota Financials' legal department.

224.   They confirmed that the dealership had deceived him regarding the return of the Mirai and that he was still responsible for the outstanding debt.

225.   The amount Mr. Salinas paid before returning the Mirai was between $6,000 and $10,000, with a monthly payment of $734.94 and a substantial outstanding debt with Toyota Financial exists for his Mirai.

- 31 -
**AMENDED COMPLAINT**

226. Mr. Salinas also now has a second new contract for a Toyota Camry, with a monthly payment of $706; which he thought the higher monthly payment was due to the trade in deal.

227. This treatment added to the dehumanization Mr. Salinas experienced throughout this process. See his declaration attached hereto as Exhibit D.

228. They took advantage of him because he is elderly, unsophisticated and a non-English speaker. They specifically sent staff members at him that spoke Spanish, so that he would feel comfortable signing documents he didn't understand. And all of this incredibly horrible situation stems from the illicit sale and lies they used to push the Mirai on him.

229. Consequently, Toyota terrorizes senior citizens, active military service members, women, and native Spanish speakers, with a hydrogen fuel car scam, puts them in immediate harm's way and causes ongoing emotional distress related to the unviability of the Mirai.

**JAMES LANE**

230. Mr. Lane purchased his Toyota Mirai from Roseville Toyota in 2022.

231. The sales agents at the dealership said that Toyota was building off the backbone of hydrogen stations that are open, and that more hydrogen stations would quickly be built.

232. No additional hydrogen stations were built since Mr. Lane purchased his Toyota Mirai.

233. More often than not, Mr. Lane would travel to obtain fuel based on the website h2fcp.org (the car's in-app hydrogen fuel locater was so inaccurate it is worthless) and when he arrived at the station there was no fuel available because the machine was not working.

**AMENDED COMPLAINT**

533

234. More often than not, the pump would freeze onto Mr. Lane's Mirai and would necessitate an indeterminate amount of time for it to unfreeze from Mr. Lane's Mirai.

235. On average, if fuel is available, then refueling takes close to an hour between freezes, lines and trouble-shooting.

236. Mr. Lane's monthly payment is just under $1,000 a month.

237. Separately, Mr. Lane recently was involved in a car crash with his Mirai. This resulted in a total loss for the vehicle according to the insurance company Safeco.

238. Safeco, Mr. Lane's insurance company and the only policy in play in this incident stated they will only provide approximately $13,000 to payout the car.

239. Mr. Lane would still owe over approximately $15,000 per his contract.

240. Therefore, Mr. Lane refrained from closing his claim with Safeco and continues to pay his monthly car payment, as he cannot afford the $15,000 discrepancy that the finality of the insurance claim would bring.

241. Mr. Lane is therefore literally paying for a car that no longer exists only to save his credit from being ruined.

242. This situation has been and continues to be stressful. The uncertainty of being able to continue to make car payments for a car that Mr. Lane is not using increases on the daily.

243. The stories go on and on. Every Plaintiff has intense hardships from this fraudulent car scheme Toyota pulled on them.

## FIRST CAUSE OF ACTION

### Fraud

244. Plaintiffs incorporate each preceding allegation in this cause of action.

**AMENDED COMPLAINT**

534

245. Toyota's fueling network is not viable for real-world use, and its executives are fully aware of these limitations. The advertised tank capacities of the Mirai—5.0 kg for first-generation models and 5.6 kg for second-generation models—are unattainable. The vehicles cannot be fully fueled due to ambient temperature, residual fuel left in each tank, faulty sensors and other fueling protocols, leaving customers with far less range than advertised. (See part two of Michael Dray's declaration attached hereto as Exhibit A).

246. Toyota forces its customers to rely on hydrogen stations with unreliable or misleading functionality, all while capturing and monetizing their data. These stations are plagued by operational inefficiencies, including excessive downtime, insufficient pressure recovery, and dangerous nozzle malfunctions, all of which Toyota knew about during development.

247. Toyota's claims of a 300+ mile range for the Mirai are knowingly false. The fueling limitations at hydrogen stations prevent tanks from reaching full capacity, and the environmental conditions further diminish available fuel. Toyota's own engineers admit this limitation, yet the company deliberately misrepresents these figures to consumers. The Mirai even where fully filled does not display the mileage promised to the consumer.

248. Toyota advertises TO THIS DAY that the Mirai hydrogen fueling as a seamless, five-minute process akin to refueling with gasoline; **they advertise this explicitly on their website**. This is an outright fabrication. Fueling requires long waits due to the need for station tanks to recompress hydrogen between customers—a process Toyota helped standardize but never disclosed to buyers. If the corporation boasts about a cheerful seamless experience like gas on its website and likening it to its hybrid gas and electric products (See e.g. press releases from Toyota attached hereto as Exhibit E that describe the car as convenient and like gas and juxtaposing it to their hybrid gas products) imagine the lies the dealership sales agents are embellishing based off that.

- 34 -
AMENDED COMPLAINT

535

249. Toyota has misrepresented hydrogen as an environmentally friendly fuel. The production, storage, and distribution of hydrogen generate more carbon emissions than gasoline or battery electric alternatives. Toyota knowingly perpetuates this myth to secure government funding and incentives under the guise of combating climate change and with carbon credits.

250. Stations under the California Hydrogen Partnership's network, including those directly supported by Toyota, maintain detailed electronic records of fueling events. These records indisputably show systemic shortfalls in hydrogen delivery and performance. Toyota's access to this data means it has long been aware that the stations cannot deliver the promised hydrogen amounts, yet it continues to deceive the public and regulators.

251. By knowingly pushing a product that relies on an unworkable fueling network, Toyota leaves customers stranded, financially drained, and unable to use their vehicles. Each additional Mirai sold worsens the already overburdened hydrogen infrastructure, compounding physical, financial, and mental harm to current owners.

252. The car is not merchantable and Toyota knows this—there's no reliable hydrogen fuel for people to fill up their cars.

253. The online maps Toyota directs customers to rely on are not reliable and Toyota knows this. They helped ensure it was inaccurate when they forced a reliable station off the map. They field thousands of complaints about the map and do nothing or warn people that the map is inaccurate.

254. The Mirai cannot be driven long distances.

255. Toyota markets to the public that refueling their car with hydrogen takes around five minutes, and the experience is like fueling at a gas station. Toyota knows hydrogen stations don't operate like gas stations, as for example a key difference is that hydrogen stations need to recompress the hydrogen between fills – a lengthy process absent in gas stations.

- 35 -
**AMENDED COMPLAINT**

536

256.   Toyota promises six or three years of fuel for free with a fuel card incentive—with current hydrogen prices the fuel car cannot last longer than 18 months if regular usage of the car was possible, and Toyota has knowledge about hydrogen prices, as Toyota is in financial agreements with the largest fuel operators in California and owns their own hydrogen stations.

257.   Right before Toyota put Plaintiffs' car into production and sale, Toyota was touting the fact that Shell was scheduled to open 50 stations.

258.   Shell permanently closed its seven stations and stopped any hydrogen fuel operations.

259.   The Mirai is toxic for the environment.

260.   Toyota still sells the Mirai despite this and plans to sell 200,000 units of this vehicle!

261.   Toyota promised Plaintiffs three or six years of fuel for free with a fuel card incentive—the fuel car lasts less than 18 months, and Toyota has exclusive knowledge about hydrogen prices, as Toyota is in financial agreements with the largest fuel operators in California, owns their own hydrogen stations and is in a partnership with all hydrogen fuel companies.

262.   Toyota has control over the h2fcp.org website and knows it's inaccurate[2] yet its dealership sales agents directed Plaintiffs to use that website.

263.   Toyota set the hydrogen fueling standard in California.[3]  Toyota's fueling standard, SAEJ2601 requires that each station recompress hydrogen between refueling; a process that Toyota knows takes more than 30 minutes.[4] On average, when a station is operable, Plaintiffs wait about an hour to obtain fuel and disconnect from the fuel pump.

---

[2] See declaration of Michael Dray attached hereto as Exhibit A that details the heavy abuse Toyota inflicted on a state funded university research facility that had a functioning green hydrogen station.

[3] *Id.*

[4] Toyota's engineer for the Mirai admits that 30-40 minutes wait time for fuel is too long for an ordinary driver. See, Hydrogen fuel-cell car push 'dumb'? Toyota makes a case for the Mirai | Reuters, https://www.reuters.com/article/technology/hydrogen-fuel-cell-car-push-dumb-toyota-makes-a-case-for-the-mirai-idUSKBN1CV0IP/, last visited November 5, 2024 ("a 30- to 40-minute wait is still too long for many ordinary drivers with busy lives, says Yoshikazu Tanaka, the chief engineer in charge of Toyota's Mirai").

- 36 -
**AMENDED COMPLAINT**

537

264.    Toyota actively advertises that the Mirai obtains over 300 miles range on a single fill up through numerous oral representations to the Plaintiffs at the point of sale, and in written advertisements, without any mention of the EPA.

(i)    For example, the number one largest Toyota dealership globally is defendant Longo Toyota, located in Southern California.  As per the attached screenshot off Longo Toyota's website, the dealership advertises that the XLE trim of the car achieves 402 miles to the tank without any mention of the EPA or any Asterix to provide any qualifying information.  Consequently, it is Toyota giving its own manufacturers' mileage promise.  See, https://www.longotoyota.com/toyota-mirai.html?srsltid=AfmBOookmw-rymNQONVwGgs2M0o8zh2PAZ46xHedWHJewctxubZRoxWy (last visited October 21, 2024) In numerous places on Longo Toyota's website the dealership explicitly represents that mileage range is Toyota's estimate and does not mention the EPA.

(ii)    Similarly, Toyota of Hollywood makes the bold unqualified claim that "the Mirai comes standard with a driving range of 402 miles.  The higher Limited trim a still impressive driving range of 347 miles." See, https://www.hollywoodtoyota.com/new-toyota/mirai.htm?gad_source=1&gclid=CjwKCAjw1NK4BhAwEiwAVUHPULv0fneMcf-bJjw6Ixd1Hlhyw2KNnyMUP3Nldt5EBIrXNQPWk21H8xoCXCkQAvD_BwE (last visited October 21, 2024.)

265.    Toyota, and their sales agents know these representations regarding 300 plus miles were false.

266.    Toyota knows these are false because the car cannot accept the full amount of hydrogen that it advertises is the tank's capacity—it has nothing to do with how the driver is driving the car.

267.    These lies are material as Plaintiffs would not have purchased the car without these lies.

268.    Yoshikazu Tanaka, the chief engineer in charge of Toyota's Mirai's has stated publicly that "Elon Musk is right - it's better to charge the electric car directly by plugging in."  Other top Toyota executives have admitted publicly that the Mirai is a failure, yet Toyota continues to sell the car.

**AMENDED COMPLAINT**

538

269.   Toyota also knows that hydrogen is inherently more dangerous as there have been explosions at plants that cause supply shortages

270.   This extra danger is partially because hydrogen fuel cannot have a scent added for people to smell in case of leaks since any odorant would ruin the Mirai's fool cell stack.  So, Toyota knows the hydrogen it uses must be pure beyond the point of commercial viability and consumer safety.

271.   The Mirai also collects personal data from customers at unprecedented levels without fully informing consumers and sells this data to their detriment to insurance companies.

272.   Although the car has "zero-tailpipe" emissions, the production of hydrogen by the kilogram versus the production of gasoline per kilogram is severely worse.  Plaintiffs would never have purchased the car had they known this fact.

273.   Plaintiffs relied on Toyota's brand and representations as to the Mirai.

274.   Plaintiffs were damaged that they made an expensive purchase that cannot be used or sold that puts them in physical and mental danger.

275.   Even if a hydrogen station works it must recompress the hydrogen to dispense fuel for the next car, a process that takes longer than 30-40 minutes.

276.   Toyota's own engineer for the Mirai admits that 30-40 minutes wait time is too long for an ordinary driver to wait for fuel.[5]

277.   Wait times on average are over an hour to obtain fuel and the continued sale of the vehicle ensures that wait times will increase.

278.   For this same reason as to delays in fueling, First Element also commits fraud in advertising that the refueling that the process is "like gasoline" and only takes a few minutes, on their website: https://www.truezero.com/.

---

[5] See, Hydrogen fuel-cell car push 'dumb'? Toyota makes a case for the Mirai | Reuters, https://www.reuters.com/article/technology/hydrogen-fuel-cell-car-push-dumb-toyota-makes-a-case-for-the-mirai-idUSKBN1CV0IP/, last visited November 5, 2024 ("a 30- to 40-minute wait is still too long for many ordinary drivers with busy lives, says Yoshikazu Tanaka, the chief engineer in charge of Toyota's Mirai").

- 38 -

**AMENDED COMPLAINT**

279.   In sum, Toyota made material misrepresentations and concealed material facts regarding the Toyota Mirai and the hydrogen fuel infrastructure, including: a. **Hydrogen Fuel Availability**: Toyota represents that hydrogen fuel is readily available throughout California for the Mirai, when in fact there were only 24 functional fuel nozzles in the entire state, most of which were frequently inoperable. b. **Fueling Process and Time**: Toyota markets the hydrogen fueling process as "just like gas" and promised it would take "approximately five minutes," when Toyota knew this was false due to the limitations imposed by Toyota's own fueling standard (SAEJ2601), which required lengthy recompression periods between customers. c. **Vehicle Range**: Toyota expressly represents that the Mirai achieves "402 miles" range (XLE trim) or "357 miles" range (Limited trim) on a full tank, when Toyota knew the Mirai could never achieve these figures under real-world conditions in California. d. **Tank Capacity**: Toyota advertised tank capacities of 5.0 kg (first-generation) and 5.6 kg (second-generation) models while knowing these capacities were unattainable due to ambient temperature constraints, Toyota's own fueling protocols, and station limitations. e. **Environmental Impact**: Toyota markets the Mirai as environmentally friendly while concealing that hydrogen production, as implemented in California, generates more carbon emissions than other automotive fuel sources and is derived primarily from methane rather than water as implied in Toyota's marketing. f. **Station Map Accuracy**: Toyota directs Plaintiffs to rely on the h2fcp.org website and in-car fuel map for locating available hydrogen fuel, while knowing these resources provided persistently inaccurate information that led consumers on fruitless journeys to inoperable stations. g. **Expansion of Hydrogen Infrastructure**: Toyota represents that the hydrogen refueling network will expand rapidly, including beyond California's borders, while knowing that no such expansion was or is imminent and existing stations are closing rather than multiplying. h. **Free Fuel Incentives**: Toyota offered "free fuel" cards purportedly

- 39 -
AMENDED COMPLAINT

540

worth thousands of dollars and valid for three or six years, while knowing that rising hydrogen prices and station limitations would render these incentives worth substantially less than represented.

280.    Toyota knew these representations were false or made them with reckless disregard for their truth or falsity, as evidenced by: a. Toyota's intimate involvement with and financial control over the hydrogen fuel infrastructure through loans exceeding $25 million to First Element (True Zero) and partnerships with other fuel providers; b. Toyota's development and enforcement of the SAEJ2601 fueling standard, which explicitly acknowledged the limitations of hydrogen refueling in California's climate conditions; c. Toyota's electronic records of fueling events showing consistent failure to achieve advertised fill levels; d. Toyota's deployment of independent contractors to monitor station performance, revealing persistent outages and operational failures; e. Toyota's prior acknowledgment of hydrogen fuel shortages in 2019 when it forgave six months of payments for first-generation Mirai owners; f. Toyota's Chief Engineer Yoshikazu Tanaka's *public* admission that "Elon Musk is right – it's better to charge the electric car directly by plugging in," demonstrating internal knowledge of the Mirai's fundamental flaws; and g. Toyota's active suppression of independent hydrogen stations, such as California State University Los Angeles's clean hydrogen station, demonstrating Toyota's awareness of and desire to control the severe limitations of hydrogen infrastructure.

281.    Toyota intended that Plaintiffs rely on these misrepresentations and concealed facts when deciding to purchase or lease the Mirai, as evidenced by: a. Toyota's continued aggressive marketing and sales of the Mirai despite mounting evidence of its impracticality; b. Toyota's targeting of vulnerable consumers, including senior citizens, non-English speakers, and military personnel; c. Toyota's use of dealership personnel who falsely claimed to own and regularly use Mirai vehicles themselves; d. Toyota's distribution of misleading one-page flyers

- 40 -
AMENDED COMPLAINT
541

showing planned hydrogen stations that never materialized; and e. Toyota's deliberate juxtaposition of the Mirai to its successful Prius hybrid vehicle to create false expectations of practicality and market adoption.

282. Plaintiffs reasonably relied on Toyota's misrepresentations and concealments when purchasing or leasing their Mirai vehicles because: a. Toyota is a trusted, established automotive manufacturer with a reputation for reliability and honest dealing; b. Plaintiffs had no independent means to verify Toyota's claims about hydrogen infrastructure, fuel availability, or the Mirai's actual performance capabilities prior to purchase; c. Toyota leveraged its brand reputation to create undue trust in the Mirai's viability; and d. Toyota's representations appeared plausible and were presented with apparent authority and technical expertise that Plaintiffs could not reasonably question.

283. As a direct and proximate result of Toyota's fraudulent conduct, Plaintiffs have suffered substantial damages, including but not limited to: a. Payment of substantial sums (typically $40,000-$60,000) for vehicles that cannot be reliably used for ordinary transportation purposes; b. Severe depreciation of their vehicles (90% immediately after purchase), resulting in catastrophic negative equity; c. Additional expenses for alternative transportation when their Mirai vehicles cannot be fueled or are inoperable; d. Loss of time spent searching for operational hydrogen stations and waiting for fuel; e. Physical endangerment from stranded vehicles, dangerous fueling equipment, and unpredictable vehicle performance; f. Mental and emotional distress caused by the inability to use their vehicles and the financial burden of continued payments; and g. Privacy violations from undisclosed data collection practices. Each Plaintiff has experienced substantially similar fraudulent conduct, as Toyota employs standardized marketing materials, dealership training, and sales practices across California, the only state where the Mirai is sold. Toyota's conduct is despicable and undertaken with malice, oppression, and fraud, entitling Plaintiffs to punitive damages

**AMENDED COMPLAINT**

542

pursuant to California Civil Code § 3294. As a result of Toyota's fraud, Plaintiffs are entitled to rescission of their purchase/lease agreements, restitution of all payments made, compensatory damages, punitive damages, and all other relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

284. Plaintiffs incorporate each preceding allegation in this cause of action.

285. Toyota manufactured, distributed and warranted the Mirai.

286. Plaintiff received an implied warranty of merchantability for the Mirai from the dealership and manufacturer by way of the California Lemon Law California Civil Code Section 1792 and as a result of the sale. Such an implied warranty is barred from modification or disclaimer under California Civil Code Section 1793.22, subdivision (e)(2).

287. Plaintiffs bought the vehicle primarily for personal, family, or household purposes.

288. Plaintiff has performed all conditions under the agreement governing the sale.

289. Per California's Lemon Law (Cal. Civ. Code, section 1791.1(a).) the Mirai must: (1) Pass without objection in the trade (2) Be fit for the ordinary purposes for which such goods are used (3) Be adequately labeled. (4) Conform to the promises made. The Mirai does not meet any of these requirements.

290. Under the California Lemon Law a.k.a. the Song-Beverly Consumer Warranty Act, the Mirai is a "consumer good" purchased primarily for family or household purposes and Plaintiffs used the vehicle primarily for those purposes. Plaintiffs are a "buyer" of consumer goods under the California Lemon Law.

291. The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The defects and nonconformities substantially impair the use, value and safety of the Mirai.

- 42 -
AMENDED COMPLAINT

543

292.   No authorized repair facilities are able to conform the Toyota Mirai to the applicable warranties.

293.   By failure of Toyota to remedy the defects as alleged herein, or to issue a refund or replacement, Toyota is in breach of its obligations under the California Lemon Law.

294.   Toyota breached warranties in that the Mirai was not of merchantable quality as numerous issues arise for each Plaintiff, for example at least more than one of the following: the car shuts off randomly, the battery drains excessively, there are unaddressed safety recalls, there are deeply concerning fault codes that dealers cannot explain or clear, the car leaks excessive water, the seat heaters and steering wheel heater remain on the highest setting without input by the driver, the car tank cannot be fully filled, the car cannot be fixed anywhere besides a few select dealerships, there's an expiration date hidden on the inside of the hydrogen tank, the in-car app provides inaccurate data as to available hydrogen fuel, the car fuses with all pump nozzles when being refueled.

295.   Toyota also breaches warranties made to consumers with advertisements and promises at the point of sale that the car achieves 350+ miles per tank when it does not.  The last 60 miles are not possible to count, since the lack of reliable fuel means that unlike a regular internal combustion engine car that can be used practically to the last drop of gas – a hydrogen tank is not practical to refuel easily so once a driver is down to the last 60 miles refueling is critical or the driver is likely to get stranded.

296.   The lack of fuel prohibits a customer from taking the car on long trips.

297.   The lack of fuel prohibits the car from being able to be used for work.

298.   The Mirai's multiple defects make it more than likely for Plaintiffs to use the vehicle with inconvenience, failure, and mechanical breakdown.

299.   The Mirai was delivered to Plaintiffs with serious defects and nonconformities to warranty.

- 43 -
AMENDED COMPLAINT

544

300.  The foregoing defects and nonconformities to warranty manifested themselves in the Mirai within the applicable express warranty period.

301.  Nonconformities substantially impair the use, value, and safety of the Mirai.

302.  Toyota has failed to promptly replace the new motor vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

303.  By failure of Toyota to remedy the defects as alleged above or to issue a refund or replacement vehicle, Defendants are in breach of their obligations under the Song-Beverly Act.

304.  Plaintiffs are entitled to incidental, consequential, and general damages from Toyota's failure to comply with its obligations under the Song-Beverly Act.

305.  Plaintiffs are entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, punitive treble damages reasonably incurred in connection with the commencement and prosecution of this action.

306.  Because Toyota willfully violates the Song-Beverly Act, Plaintiffs are entitled, in addition to the amounts recovered, a civil penalty of up to two times the number of actual damages for Toyota's willful failure to comply with its responsibilities under the Act.

307.  Plaintiffs justifiably revoke acceptance of Toyota Mirai under the California Lemon Law.

## THIRD CAUSE OF ACTION

### Violation of The Consumers Legal Remedies Act, Civil Code § 1750, et seq.

### (Against Toyota)

308.  Plaintiffs incorporate each preceding allegation in this cause of action.

309.  The Vehicle constitutes "goods" bought for primarily personal, family, or household purposes per Civil Code §1761(a).  Plaintiff is a "consumer" per Civil

- 44 -
**AMENDED COMPLAINT**

545

Code § 1761(d). The advertisement and sale of the Vehicle to Plaintiff are a "transaction" per to Civil Code § 1761(e).

310. The defendants violated the Consumers Legal Remedies Act as follows: misrepresenting the source, sponsorship, approval, or certification of goods or services (Civil Code § 1770(a)(2)); representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have (Civil Code § 1770(a)(5)); representing that goods or services are of a particular standard, quality, or grade, if they are of another (Civil Code § 1770(a)(7)); advertising goods or services with intent not to sell them as advertised (Civil Code § 1770(a)(9)); representing that a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law (Civil Code § 1770(a)(14)); representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Civil Code § 1770(a)(16)).

311. The above statutory provisions were violated, and Plaintiff suffered actual damage thereby, due to the defendants' concealments and misrepresentations as described above. Plaintiff would not have purchased the Vehicle if Toyota and Dealer had truthfully advised that the realistic range of the Vehicle was only approximately 200-250 miles per tank, that the fueling stations were unlikely to input sufficient hydrogen fuel to allow for the advertised 312-mile range, and that the fuel-station network would not consistently provide "five minute" refueling at locations reasonably near Plaintiff's residence or business.

312. Plaintiff seeks an order prohibiting the defendants from engaging in the acts of false advertising described above in this Complaint. Plaintiff is informed and believes that the activities and unlawful acts constitute a pattern and practice of doing business in violation of the Civil Code. These violations of Civil Code § 1770 present a continuing threat to members of the public and will not cease until an injunction is issued by this Court.

**AMENDED COMPLAINT**

546

313.   Plaintiff also seeks pursuant to Civil Code § 1780, in addition to the injunctive remedies set forth above, actual, consequential and incidental damages, rescission and restitution, attorney's fees and other litigation costs.  Further, Toyota has acted with malice, oppression, and/or fraud towards Plaintiff, within the meaning of Civil Code § 3294, thereby entitling Plaintiff to an award of punitive damages.  Toyota's corporate officers, directors, or managing agents personally acted with oppression, fraud, or malice; had advance knowledge of the unfitness of the employees who acted towards Plaintiff with malice, oppression, or fraud; employed such employees with conscious disregard for the rights or safety of others; and/or themselves authorized or ratified the wrongful conduct.

314.   Plaintiff has served the demand letter required by Civil Code Section 1782, and the yet the defendants have not responded with an offer of appropriate correction, repair, replacement, or other remedy, within a reasonable time, within 30 days after receipt of the demand letter.

## **FOURTH CAUSE OF ACTION**

## **VIOLATION OF CAL. BUS. & PROF. CODE §17200. ET SEQ.**

315.   Plaintiffs incorporate each preceding allegation in this cause of action.

316.   Toyota is a business regulated under the Unfair Competition Law which prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

317.   Toyota engages in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code Section 17200 as set forth herein, including by misrepresenting the capabilities, environmental impact, and refueling infrastructure of the Toyota Mirai, and by continuing to sell Mirai vehicles despite knowledge of significant refueling limitations. This has misled and harmed consumers who reasonably relied on Toyota's representations.

**AMENDED COMPLAINT**

547

318. Toyota markets the car as just like a gas car experience and it's not; Toyota's own fueling standard prevents the car tank from being fully filled due to the ambient temperature in California. Toyota claims the tank of the Mirai can hold 5 kilograms and it cannot under normal circumstances.

319. Additionally, Toyota engaged in unlawful conduct by making fraudulent statements about the Mirai's refueling capabilities, ease of use, and environmental impact, as set forth in California Civil Code Sections related to fraud. Toyota also lends capital to the hydrogen fuel station owners and operators and are intertwined with them in their state approval process and does not disclose this to customers before purchase. Toyota also gives faulty real time information regarding the availability of hydrogen fuel through its in car app and through the h2fcp.org website of which they have control and direct customers to rely on for fueling information. See attached declaration of Michael Dray to illustrate how Toyota controls the very governmental website they direct consumers like Plaintiffs to rely on for fuel availability information.

320. Toyota violates the California's Song-Beverly Consumer Warranty Act (Cal. Civ. Code Section 1791.1), as the Mirai fails to meet basic merchantability standards due to the smaller than advertised tank capacity and lack of reliable refueling infrastructure and inability to perform as promised.

321. Toyota breaches its implied covenant of good faith by selling Mirai vehicles and exacerbating the limited availability of hydrogen fuel and diminishing the usability of the vehicle for current Mirai owners.

322. Creating Scarcity in Refueling Resources:

A. By controlling the hydrogen fuel market and closing down fueling opportunities. See attached declaration of Michael Dray, detailing Toyota's control of the hydrogen fuel standard, stations and governmental online fuel map.

- 47 -
**AMENDED COMPLAINT**

548

B.   By selling additional Mirai vehicles despite knowledge of the limited hydrogen infrastructure, Toyota creates undue competition among existing Mirai owners, leading to increased waiting times, range anxiety, and decreased vehicle utility. This conduct violates public policy by undermining consumers' ability to use their vehicles as promised.

323. By selling the Mirai for different prices in different geographic locations within California; offering rebates that effectively wipe out any secondary market for the Mirai; offering incentives to customers that do not materialize, and other bait and switch advertising and disclosures. Concealing Environmental and Privacy Impacts: Toyota misleadingly markets the Mirai as eco-friendly and "zero-emission" without disclosing the high carbon emissions associated with hydrogen production and transport. Additionally, Toyota fails to adequately disclose that the Mirai collects and sells consumers' location and driving data, a practice that harms consumer privacy and violates reasonable expectations of privacy and confidentiality.

324. Toyota violates the California's Song-Beverly Consumer Warranty Act (Cal. Civ. Code Section 1791.1), as the Mirai fails to meet basic merchantability standards due to the lack of reliable refueling infrastructure and inability to perform as promised.

325. Toyota's unlawful, unfair, and fraudulent business practices have directly harmed Plaintiffs by leaving Plaintiffs with a vehicle that's frequently unusable due to a lack of refueling options and causing financial and emotional strain. Toyota's misleading environmental and data privacy representations further harm the public by obscuring the true environmental costs and privacy risks of hydrogen vehicle ownership.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

- 48 -

AMENDED COMPLAINT

549

326. Plaintiffs incorporate each preceding allegation in this cause of action.

327. Toyota, through its corporate marketing, dealership personnel, and authorized representatives, made false representations of material fact to Plaintiffs, including:

a. That hydrogen fuel was readily available for the Mirai throughout California;

b. That refueling the Mirai was a quick and simple process taking "approximately five minutes" and was "just like gas";

c. That the Mirai had a driving range of 402 miles (for XLE trim) or 357 miles (for Limited trim) on a full tank;

d. That the Mirai's hydrogen tanks could be fully filled under normal California climate conditions;

e. That the hydrogen fuel network was expanding and would soon extend beyond California;

f. That the h2fcp.org website and in-car map provided accurate and reliable information about hydrogen fuel availability;

g. That hydrogen fuel was environmentally friendly and produced minimal carbon emissions; and

h. That the free hydrogen fuel card provided would cover fuel costs for the advertised period (three or six years).

328. At the time these representations were made, Toyota had no reasonable grounds for believing them to be true because:

a. Toyota had knowledge through its partnerships with hydrogen fuel providers, including First Element (True Zero) and Iwatani, that hydrogen stations were frequently inoperable and incapable of consistently delivering full fills;

- 49 -
**AMENDED COMPLAINT**

550

b. Toyota's own fueling standard (SAEJ2601) acknowledges that ambient temperatures in California may prevent full fills and more critically require lengthy recompression between customers;

c. Toyota tracked customer complaints and station outage data showing persistent, systemic problems with the hydrogen infrastructure;

d. Toyota knew through its financial control of and close relationship with the California Fuel Cell Partnership that the h2fcp.org website provided inaccurate information about station availability;

e. Toyota was aware that hydrogen production in California primarily relied on steam methane reformation, which produces significant carbon emissions; and

f. Toyota knew that rising hydrogen prices and station limitations would render the fuel card incentive worth substantially less than represented.

329. Toyota intended that Plaintiffs rely on these misrepresentations in deciding to purchase or lease the Mirai, as evidenced by Toyota's targeted marketing campaigns, dealership training, and persistent promotion of the Mirai despite mounting evidence of its impracticality.

330. Plaintiffs reasonably relied on Toyota's misrepresentations when purchasing or leasing their Mirai vehicles. Toyota is a trusted, established automotive manufacturer with a reputation for reliability, and Plaintiffs had no independent means to verify Toyota's claims about hydrogen infrastructure, fuel availability, or the Mirai's actual performance capabilities prior to purchase.

331. As a direct and proximate result of Toyota's negligent misrepresentations, Plaintiffs have suffered damages including but not limited to:

a. Payment of substantial sums for vehicles that cannot be reliably used for ordinary transportation purposes;

b. Severe depreciation of their vehicles, resulting in negative equity;

**AMENDED COMPLAINT**

551

c. Additional expenses for alternative transportation when their Mirai vehicles cannot be fueled or are inoperable;

d. Loss of time spent searching for operational hydrogen stations and waiting for fuel;

e. Mental and emotional distress caused by the inability to use their vehicles and the financial burden of continued payments; and

f. Privacy violations from undisclosed data collection practices.

332. Had Plaintiffs known the truth regarding these material facts, they would not have purchased or leased the Mirai vehicles.

333. As a result of Toyota's negligent misrepresentations, Plaintiffs are entitled to rescission of their purchase/lease agreements, restitution of all payments made, compensatory damages, consequential damages, and all other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

334. Wherefore, Plaintiffs pray for judgment as follows:

335. An injunction against Toyota to bar all sales and marketing for its hydrogen fueled car:

(i) An apology from Toyota that acknowledges that they wrongfully and unlawfully sell a car to the detriment of existing customers.

(ii) Toyota's wrongful sale of this vehicle, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to the plaintiffs as increased sales further renders their car useless and precludes fueling and as their personal data is harvested for profit.

(iii) Plaintiffs have no adequate remedy at law for the injuries currently suffered as an award of monetary damages would not provide an adequate remedy since the ongoing sale causes extreme financial hardship, further deteriorates the hydrogen fueling network and causes emotional pain and collects data unbeknownst to Plaintiffs.

(iv) Consumers cannot afford to pay for a car they cannot use and the ongoing financial and mental burden associated with these forced payments cannot be remedied with money.

(v) Plaintiffs also suffer from a government taking as to exorbitant Department of Motor Vehicle fees associated with this Mirai.

- 51 -

**AMENDED COMPLAINT**

552

(vi)    Sales must cease.

(vii)   Contracts must be rescinded.

(viii)  The California government must be enjoined from charging inflated DMV fees to fund this nonsense.

(ix)    All state funding to benefit Toyota must immediately halt.

(x)     Any funding provided to hydrogen initiatives that benefit Toyota's after the date of this lawsuit is subject to a claw back.

336.   An injunction to halt all collection and sale of data of Toyota Mirai customers.

337.   An injunction disbanding the California Hydrogen Fuel Cell Partnership.

338.   Refund of all Mirai downpayment, and car payments.

339.   Refund of insurance and DMV registration payments.

340.   Treble damages as permitted under the Song Beverly Act.

341.   Punitive damages.

342.   Reasonable attorney's fees and costs of suit;

343.   Other further relief as the Court may deem just and proper.


Dated: June 25, 2025                    THE INGBER LAW GROUP


                                        /s/ Jason M. Ingber
                                        Jason M. Ingber, Esq.
                                        Attorney for Plaintiffs

**AMENDED COMPLAINT**

553